**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

REHAB S.,

                Claimant,

       v.

KILOLO KIJAKAZI, Acting Commissioner
of Social Security,

              Respondent.

No. 19 CV 93

Magistrate Judge Jeffrey T. Gilbert

**MEMORANDUM OPINION AND ORDER**

Claimant Rehab S.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") and Social Security Income ("SSI") under Titles II and XVI of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 9]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c), and the parties have filed cross-motions for summary judgment [ECF Nos. 21, 28] pursuant to Federal Rule of Civil Procedure 56. For the reasons discussed below, Claimant's Motion to Reverse the Decision of the Commissioner of Social

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

Security [ECF No. 21] is granted and the Commissioner's Motion [ECF No. 28] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

## PROCEDURAL HISTORY

On July 7, 2016, Claimant filed Title II and Title XVI applications for DIB and SSI, respectively, alleging disability beginning on August 29, 2014. (R. 217-226). Her claim was denied initially and upon reconsideration, after which Claimant requested a hearing before an Administrative Law Judge ("ALJ"). (R. 136-153). On December 12, 2017, Claimant appeared and testified at a hearing before ALJ Karen Sayon. (R. 28-76). ALJ Sayon also heard testimony on that date from impartial vocational expert ("VE") Kathleen Doehla. (R. 60-76). On March 14, 2018, ALJ Sayon denied Claimant's claim for DIB and SSI. (R. 10-22).

In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. See 20 C.F.R. §§ 404.1520(a), 416.920(a). At step one, the ALJ found that Claimant did not engage in substantial gainful activity during the relevant period from August 29, 2014, her alleged onset date, through March 14, 2018, the date of the ALJ's decision. (R. 16). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c) and 416.920(c). (R. 16). Specifically, Claimant suffered from diabetes mellitus with neuropathy, obesity, mild osteoarthritis, and DeQuervain's tenosynovitis on the left. (R. 16). The ALJ also acknowledged several non-severe complaints – hypertension, asthma, diabetic retinopathy, right fourth trigger finger, and depression – but concluded these impairments did not cause work-related limitations. (R. 16). Specifically, regarding Claimant's depression, the ALJ considered the four broad areas of mental functioning, or paragraph "B" criteria, and concluded that Claimant had no

2

more than mild limitations in all four areas of understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 16-17).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 17). In particular, the ALJ considered listing 1.02, 1.04, 11.14, and SSR 14-2p, but concluded that Claimant did not meet or medically equal the severity of those listings because Claimant's "gait is normal, she has a full range of motion," and she has "intact motor strength/sensation." (R. 17).

The ALJ then found Claimant had the RFC,[3] through her date last insured, to:

> "perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) with no climbing of ladders, ropes, or scaffolding; frequent but not constant crawling, crouching, kneeling, stooping, and climbing ramps and stairs. The claimant is further limited to frequent but not constant handling and fingering with the non-dominant left upper extremity."

(R. 17).

Based on this RFC, the ALJ found at step four that Claimant did not have past relevant work. (R. 21). At step five, the ALJ concluded that, considering Claimant's age, education, past work experience, and residual functional capacity, she is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 21-22). Specifically, the VE's testimony, on which the ALJ relied, identified jobs including laundry worker, bagger, and industrial cleaner that Claimant could perform and that are available in significant numbers in the national economy. (R. 21-22). The ALJ then found Claimant was not disabled under the Act. (R. 22). The Appeals Council declined to review the matter on November 15, 2018, (R. 1-3), making

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. 42 U.S.C. § 405(g); *see, e.g., Smith v. Berryhill,* 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also, Richardson v. Perales*, 402 U.S. 389, 401 (1971). While it is not a high threshold, *Fanta v. Saul*, 2021 WL 961647, at \*2 (7th Cir. 2021), a "mere scintilla" of evidence is not enough. *Biestek,* 139 S. Ct. at 1154; *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008) (internal quotations omitted). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *See Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534

4

F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## ANALYSIS

### I.    The ALJ did not Adequately Articulate her Reasons for Discounting Claimant's Treating Physician's Opinion

In reviewing the medical opinion evidence, the ALJ assigned no weight to the opinion of Claimant's treating physician, Dr. Manesha Ogale, but great weight to the opinions of the state agency physicians Dr. Vidya Madala and Dr. Bharati Jhaveri. Claimant argues that the ALJ erred when she did not give controlling weight to Dr. Ogale's opinion that Claimant has work-preclusive physical limitations. The Court agrees for the reasons explained below.

Claimant filed her claim before 2017, meaning her treating physician's opinion is entitled to controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence." 20 C.F.R. § 404.1527(c)(2).[4] If contrary evidence is introduced, however, "the treating physician's evidence is no longer entitled to controlling weight and becomes just one more piece of evidence for the ALJ to consider." *Bates v. Colvin*, 736 F.3d 1093, 1099–100 (7th Cir. 2013) (quoting *Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008)) (internal quotations omitted); *see also, Ray v. Saul*, 2021 WL 2710377, at *2 (7th Cir. 2021). The ALJ must provide "good reasons" for discounting a treating physician's opinion, *Fair v. Saul,* 2021 WL 1711810, at *3 (7th Cir. 2021), and in so

---

[4] The Social Security Administration amended the treating-physician rule to eliminate the "controlling weight" instruction for disability applications filed on or after March 27, 2017. See 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)..., including those from your medical sources."); 20 C.F.R. § 404.1527 ("For claims filed (see § 404.614) before March 27, 2017, the rules in this section apply."). Claimant filed her application in 2016, meaning the old rule still applies. Compare 20 C.F.R. § 404.1527 (for claims filed before March 27, 2017) with 20 C.F.R. § 404.1520c (for claims filed on or after March 27, 2017).

doing, must consider the length, nature, and extent of the treatment relationship, the frequency of examination, the physician's specialty, the types of tests performed, and the consistency and support for the physician's opinion. *Larson v. Astrue,* 615 F.3d 744, 751 (7th Cir. 2010); *see also* 20 C.F.R. § 404.1527(c). So long as the ALJ minimally articulates her reasons and considers the proper factors, the decision to afford a treater's opinion less than controlling weight will stand. *Elder,* 529 F.3d at 415. The Court reviews an ALJ's decision to give more weight to state-agency doctors' opinions than a treating physician's for substantial evidence. 42 U.S.C. § 405(g); *Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008).

Dr. Ogale's opinion in this case consisted of a three-page "physical residual function capacity statement," (R. 1250-53), and was accompanied by several treatment notes.[5] The ALJ summarized Dr. Ogale's opinion as follows:

> Claimant's "pain and stress will frequently interfere with her concentration, she must lie down/recline for 10 minutes at a time for an hour per day, will be off-task more than 30 percent of the time, will be absent 3 days per month, will be unable to finish her shift 4 days per month, would have a 50 percent efficiency rating, can sit for 4 hours, can stand/walk for less than 1 hour, can rarely lift up to 15 pounds, occasionally lift up to 10, and frequently lift up to 5, can perform manipulative functions 80 percent of the time, [and] cannot climb" (R. 20).

Although the ALJ paid lip service to a few of the necessary factors, she did not adequately articulate her reasons for giving Dr. Ogale's opinion no weight. *Bauer,* 532 F.3d at 608 (when a treating physician's opinion is not given controlling weight, "the checklist comes into play"). In two sentences, the ALJ explained, "I give this opinion no weight, as the extreme limitations are

---

[5] Claimant's attorney timely notified the ALJ that he would be submitting additional treatment notes from Dr. Ogale dated December 5, 2017, but never did so. Neither this Court nor the ALJ, therefore, had the benefit of that information. Instead, the evidence of record shows that Claimant saw Dr. Ogale at least nine times over the course of three years. Specifically, Dr. Ogale treated Claimant on November 19, 2014 (R. 581-89), February 18, 2015 (R. 596-604), April 28, 2015 (R. 611-620), February 11, 2016, (R. 640-49), June 10, 2016 (R. 663-69), August 10, 2016, (R. 674-84), December 5, 2016, (R. 1014-25), May 24, 2017, (R. 1221-30), and September 21, 2017 (R. 1207-17),

wholly unsupported by the minimal treatment notes showing only mild limitations. Dr. Ogale, though a treating doctor, is only a primary care physician and is not a specialist; indeed, the claimant has not required beyond conservative care, which would not be the case were she as limited as depicted in the opinion." (R. 20). This explanation was deficient in several ways. First, while the ALJ acknowledged that Dr. Ogale treated Claimant, she did not discuss any specifics of that treatment relationship, such as the length, nature, and extent of the relationship, or the frequency of examination. This is important particularly in this case, where Dr. Ogale had been Claimant's primary care physician since November of 2014 and saw Claimant every three to four months. (R. 581, 581-89, 596-604, 611-620, 640-49, 663-69, 674-84, 1014-25, 1207-17, 1221-30, 1250). Dr. Ogale was responsible for treating and monitoring all of the ailments the ALJ characterized as severe – diabetes mellitus with neuropathy, obesity, mild osteoarthritis, and DeQuervain's tenosynovitis – and had a longitudinal view of Claimant's limitations that the ALJ did not acknowledge. And though the ALJ accurately noted that Dr. Ogale was not a specialist, she offered no explanation as to why that distinction was relevant in this case given Claimant's particular limitations and treatment needs, which likely did not require specialized care. (R. 20).

Instead, the predominant reason the ALJ discounted Dr. Ogale's opinion appears to be that she believed it was inconsistent with Dr. Ogale's own treatment notes and the objective medical record, i.e. Claimant's "conservative care." Leading up to her evaluation of Dr. Ogale's opinion, the ALJ provided a rote summary of the objective record, including findings from Claimant's emergency room visits, imaging results from x-rays and MRIs, and notes from other doctors or specialists, such as Claimant's podiatrist, ophthalmologist, and physical therapist. (R. 18-20). But she never moved beyond that summary to explain how Dr. Ogale's opinion conflicted with the record evidence, including Dr. Ogale's own notes. For example, she did not elaborate on which of

the "minimal treatment notes showing only mild limitations" contradicted which portions of Dr. Ogale's opinion, or what courses of treatment she believed constituted "conservative" care such that they were incompatible with the "extreme" limitations in Dr. Ogale's opinion. *Stacy A. v. Berryhill*, 2019 WL 1746207, at \*5 (N.D. Ill. 2019) (quotation omitted) ("If an ALJ discounts a treating physician's opinion because it is inconsistent with the evidence, she must explain the inconsistency."). Nor did she provide any record cites from which this Court could piece together that explanation. And while the record potentially was a support for the ALJ's decision on this issue – the longitudinal medical record does suggest that Claimant's various diagnoses were relatively well-controlled by medication and other medical recommendations – the Court must confine its review to the rationale offered by the ALJ. *Scott v. Astrue*, 647 F.3d 734, 739 (7th Cir. 2011). An ALJ must do more than just summarize medical findings and then, a few paragraphs later, entirely discount the only treating opinion of record without analogy or explanation. At a minimum, it was incumbent on the ALJ to articulate her "good reasons" for giving Dr. Ogale's opinion no weight and support those reasons with evidence. SSR 96-2p at \*5, 1996 WL 374188 (July 2, 1996); *Scott,* 647 F.3d at 739; *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). She did not do so here.

On remand, the ALJ also should take care to review the weight given to the opinions of Drs. Madala and Jhaveri, the state agency reviewing physicians. Although an ALJ may give weight to consultative opinions, here, the ALJ did not adequately explain why those opinions were entitled to greater weight than those of treating physician Dr. Ogale. *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003) ("An administrative law judge can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice."). Moreover, here, Drs. Madala and Jhaveri did

not see some of Dr. Ogale's later treatment notes or her medical opinion when they provided their opinions twelve and nine months, respectively, before the hearing in this case. While it is common for there to be some delay between the state agency physicians' review and the ALJ's decision, that gap meant, in this case, that Drs. Madala and Jhaveri were unable to review at least three substantive treatment notes from Dr. Ogale or Dr. Ogale's opinion, as it did not yet exist.[6] Given that Dr. Ogale was Claimant's primary care physician for at least three years leading up to Claimant's disability hearing and she provided the only medical opinion of record outside of those written by the state agency physicians themselves, the Court cannot say that Dr. Ogale's complete treatment records and her opinion would not have been material to their understanding of Claimant's functional abilities. At the very least, the state agency physicians' RFC determinations were not informed by all the medical records pertinent to Claimant's functional limitations when they offered their opinions. On remand, the ALJ should ensure that, if an updated medical review of the record is necessary to provide an informed basis for Claimant's RFC determination, she meets her "basic obligation to develop a full and fair record." *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014).

"An inadequate evaluation of a treating physician's opinion requires remand." *Cullinan v. Berryhill,* 878 F.3d 598, 605 (7th Cir. 2017). On balance in this case, the ALJ did not support her decision to give "no weight" to Dr. Ogale's opinion with substantial evidence, even under the deferential standard that controls this Court's review. It is not this Court's role to build a logical bridge between the ALJ's conclusions and the record evidence where none exists, especially where, as here, the ALJ did not even leave behind raw materials from which the Court might

---

[6] The Court recognizes that Dr. Ogale's opinion was provided to the ALJ only a day before the hearing in this case, and so the state agency physicians could not have had the opportunity to review it unless the ALJ sought medical expert review or asked to submit additional evidence to the consulting physicians. (R. 13-14).

cobble together that bridge on its own. The ALJ should have done more to evaluate the opinion of Claimant's treating physician within the framework prescribed by the Commissioner's regulations, and at the end of the day, it was her responsibility to at least minimally articulate her reasons for discounting Dr. Ogale's statements in the functional capacity form. In this Court's view, her failure to do so warrants remand on this record.

## II.    The ALJ Also Should Review her Assessment of Claimant's Subjective Symptom Testimony on Remand

The Court now turns to the ALJ's evaluation of Claimant's subjective symptom statements, which will be upheld unless it is "patently wrong." *Burmester v. Berryhill,* 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin,* 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). "SSR 96–7p provides a two-step test for adjudicators to follow when evaluating a claimant's symptoms such as pain." *Maske v. Astrue*, 2012 WL 1988442, at *11 (N.D. Ill. 2010).[7] First, "the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)…that could reasonably be expected to produce the individual's pain or other symptoms." SSR 96–7p., 61 Fed. Reg. at 34484. Second, if there is such an impairment, "the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities." *Id*. at 34485. The ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013), and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, her level of pain or symptoms,

---

[7] SSR 16-3p supersedes SSR 96-7p for disability determinations issued on or after March 28, 2016 and eliminates the use of the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character." See SSR 16-3p, at *1. The factors to be considered in evaluating symptoms under either SSR 96-7p and SSR 16-3p are the same. Compare SSR 96-7p, 1996 WL 374186 (July 2, 1996), with SSR 16-3p, 2017 WL 5180304, at *7–8 (Oct. 25, 2017).

aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7-8 (Oct. 25, 2017).

Claimant testified that she was unable to work during the relevant period because "her entire body hurts," especially her knees and back. (R. 18). She explained that she had to change positions often and could only sit for one hour at a time before having to get up and walk across her small apartment for half an hour. (R. 18). She struggled with handling and fingering, and in particular, her hands would swell and feel numb. (R. 18). Because of this, she was unable to lift anything heavier than a coffee mug. (R. 18). She was frequently nauseous because of her medication and testified that she becomes dizzy and disoriented when her blood sugar drops, which happens often. (R. 18).

Though the ALJ acknowledged the above-summarized testimony, she ultimately discounted it – though it is not clear to what degree – because Claimant's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision," even though her "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 18). This conclusion likely will need to be revisited on remand, as Claimant's symptom evaluation will be informed by a proper assessment of the medical evidence. The Court notes the ALJ did not provide a cohesive analysis of this issue in that she did not discuss whether she was discounting Claimant's subjective symptom reports in whole or in part – and if only in part, which statements were not entirely credible in her view. Nor did she touch on Claimant's activities of daily living or her level of pain and symptoms, beyond noting, as to the latter, that Claimant testified that her "entire body hurts, in particular her knees and back." (R. 18).

These factors potentially were at odds with the ALJ's conclusion that Plaintiff could perform medium work with some additional accommodations as outlined in the RFC.

On remand, the ALJ must provide a comprehensive discussion of the SSR 96-7p/16-3p factors and clearly identify which, if any, of Plaintiff's statements are not entirely credible and why. The ALJ also is reminded, as always, to explain her subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted).

## CONCLUSION

For the reasons discussed above, Claimant's Motion to Reverse the Decision of the Commissioner of Social Security [ECF No. 21] is granted and the Commissioner's Motion [ECF No. 28] is denied. This matter is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:   August 2, 2021